Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPIN MASTER LTD. and SPIN MASTER, INC., | CIVIL ACTION No. ___ |
| *Plaintiffs* | |
| v. | |
| 21CCN, ACCESSORIES FACTORY, ALLNICE, ANANAN, AOO, AYZM. AZHU999, BIG BIG HAPPY, BOXIAOSHOP, CAICHENGYA, CHANGZHOU, CHANZEY, CHENLIN, CHENXINTAO, CHENXIXIAOPU, DENGYANAI, DEXINSTORE, DINGHUIFAN, DONGPO123, DOUDOUBINBIN, DREAMTOUR, DWEQOFD, DXCUTEXT, FANFAN_FASHION, FANG HOME FITNESS EQUIPMENT STORE, FANGTIAN NVZHUANG, FASHION MAKER CO, LTD, FEILEDI TRADE, FEWTLINK, FOXTOWN VILLAGE, FUJING_021, FUYI123, GAVE LOVER, GMUIOAOJUN, GZZ JEWELRY, HALOSTORE, HAPPYNEWPRODUCT, HARNESSGOTH, HECHUNMING0211, HOLALAONE, HOMEINN NEW, HONGYU LIU SHUAIHUO, HUANZIDEDIAN, | **COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

HUDETAO, HULEFU1478, HUYULIN, ISELLYOUBUY2012-US, JUJIAYIZU, JUNLEISTORE, KUAJINGLEGOU (SHENZEN) TECHNOLOGY AND DEVELOPMENT CO. LTD, LABS_PRELOVED_CLOTHING, LADY'S FASHION, LEKANI STORE, LHLLFUSHI, LIANGSHUO_008, LIN BROTHER SHOP, LIPING520, LIUGAN2018, LIYAN99LI, LLYYHHDDDPP, LOSLANDIFEN WOMEN'S SHOES, LOVE DOVE, LUOBI IMPORT&EXPORT, LUYALUJIA, LXIAOYONGLIU, MAJIE888, MAKEUP2, MEIMEIJIAYOU, MY XIAODIAN, NATUALSTONETASSELSTORE, NIANNIANYOUYU, NIKILOVE, NV_WANG, PASTTAN, REDANTSVIEW, RINGCOLORFULL CLOTHES, SHENZEN HUANJUNSHI TRADING CO.,LTD, SHENZHEN HUGE CREATION TECHNOLOGY LTD, SHIHAIYING, SKAD, THE SHOE STORE OF SAKURA, THEBLUEXINFURNITURE, THREE PIG YUNYINGTONG, TIANJINGJING, TIANTIANSHOW, UPTOWN_GIRLS, W&B INTERNATIONAL STORE, WENDY3013, WOAINI184940, WTGGSS, WUSONG, WYXDDPWXH, XIAO7H, XINXIAOMONGXIUONG, XIQIAND, YFBY, YIFENYAN, YXDSTPRE, YYOUPEN, ZHANGJUNFEI_008, ZHANGQINGYING AND ZHENXIN AIWO FU SHI,

*Defendants*

Plaintiff Spin Master Ltd., a limited liability company organized in Canada, and Plaintiff Spin Master, Inc., a Delaware corporation and Plaintiff Spin Master Ltd.'s wholly-owned subsidiary and exclusive U.S. licensee, (collectively referred to as "Spin Master" or "Plaintiffs"), by and through their undersigned counsel, allege as follows:

## **NATURE OF THE ACTION**

This action involves claims for trademark infringement of Spin Master's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Spin Master's federally registered trademark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Spin Master's federally registered copyright in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. and related state and common law claims (the "Action"), arising from Defendants 21CCN, Accessories Factory, allnice, ananan, aoo, ayzm. azhu999, big big happy, Boxiaoshop, caichengya, changzhou, chanzey, chenlin, chenxintao, chenxixiaopu, dengyanai, dexinstore, dinghuifan, dongpo123, doudoubinbin, Dreamtour, dweqofd, dxcutext, fanfan_fashion, Fang home fitness equipment store, fangtian nvzhuang, Fashion Maker co, ltd, feiledi trade, fewTLINK, Foxtown Village, fujing_021, fuyi123, gave lover, gmuioaojun, Gzz jewelry, halostore, happynewproduct, harnessgoth, hechunming0211, holalaone, HOMEINN NEW, hongyu liu shuaihuo, huanzidedian, hudetao, hulefu1478, huyulin, isellyoubuy2012-us, JUJIAYIZU, junleistore, kuajinglegou (shenzen) Technology And Development Co. Ltd, labs_preloved_clothing, Lady's fashion, lekani store, lhllfushi, liangshuo_008, Lin Brother shop, liping520, liugan2018, liyan99li, llyyhhddddpp, LOSLANDIFEN women's shoes, love dove, Luobi import&export, luyalujia, lxiaoyongliu, Majie888, Makeup2, meimeijiayou, my xiaodian, natualstonetasselstore, niannianyouyu, Nikilove, nv_wang, pasttan, Redantsview, Ringcolorfull clothes, Shenzen Huanjunshi Trading Co.,Ltd, Shenzhen Huge Creation Technology LTD, shihaiying, skad, the shoe store of sakura, TheblueXinfurniture, Three pig yunyingtong, tianjingjing, TIANTIANSHOW, Uptown_Girls, W&B International Store, wendy3013, woaini184940, wtggss, WuSong, wyxddpwxh, XIAO7h,

xinxiaomongxiuong, XiQianD, yfby, yifenyan, yxdstpre, YYOUPEN, zhangjunfei_008, zhangqingying and zhenxin aiwo fu shi (hereinafter collectively referred to as "Defendants" or individually as "Defendant") infringement of the Twisty Petz Mark (as defined *infra*) and Twisty Petz Work (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Spin Master's Twisty Petz Products (as defined *infra*).

## JURISDICTION AND VENUE

1.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

2.      Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this

Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

    a.  Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Wish (as defined *infra*) as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts (as defined *infra*) that each Defendant operates, use to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

    b.  Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active

concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.   Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S.

d.   Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e.   Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f.   Upon information and belief, Defendants are aware of Plaintiffs, their Twisty Petz Products, Twisty Petz Mark and Twisty Petz Work, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Spin Master in the U.S., in New York and in this judicial district specifically, as Spin Master conducts substantial business in New York and has a registered office in New York.

3.   Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

## **THE PARTIES**

4.   Plaintiff Spin Master Ltd. is a Canadian corporation with a principal place of business at 121 Bloor St. East, Toronto, ON, M4W 1A9, Canada.

5.      Plaintiff Spin Master, Inc. is a Delaware corporation with a registered office at 300 International Drive, Suite 100, Williamsville, New York 14421, and principal place of business at 5880 W. Jefferson Blvd., Suite A, Los Angeles, California 90016.

6.      Upon information and belief, Defendants are merchants on the Wish.com online marketplace platform, which, upon information and belief, is owned by ContextLogic, Inc., a Delaware corporation with a principal place of business at One Sansome Street, 40th Floor, San Francisco, California 94104, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Plaintiffs and Their Well-Known Twisty Petz Products

7.      Plaintiffs are part of a large, multinational toy and entertainment company started in 1994 that designs and sells innovative children's lifestyle products and toys ("Spin Master Product(s)") under their own well-known brands, including Twisty Petz, Flutterbye Fairy, Bunchems and Hatchimals, as well as under their licensed properties, such as Paw Patrol and Air Hogs.

8.      Plaintiffs sell their Spin Master Products throughout the U.S. and the world through major retailers, quality toy stores, department stores and online marketplaces, including, but not limited to, Walmart, Toys R Us, Target, Kohl's and Amazon.com.

9.      In addition, Plaintiffs sell their Spin Master Products directly through Plaintiffs' website, available at www.shop.spinmaster.com, as well as through websites dedicated to the individual Spin Master Products.

10.     One of Plaintiffs' most recent and successful Spin Master Products is Twisty Petz, which are bejeweled pets that transform into sparkly bracelets, necklaces or backpack accessories

with a few simple twists ("Twisty Petz Products").  There are over 70 types of Twisty Petz to collect, ranging from Leona Lion to Pearly Puppy to Zaggy Zebra and more.  Images of Spin Master's Twisty Petz Products are attached hereto as **Exhibit A** and incorporated herein by reference.

11.     Twisty Petz has been named one of the "hottest toys for 2018" by the *New York Post* and was included in *Amazon's 2018 Holiday Toy List*.[1]  The Twisty Petz Products are predicated to sellout and become impossible to find due to their popularity.[2]

12.     The Twisty Petz Products retail from $5.99 (individual) to $14.99 (set of three).

13.     While Plaintiffs have gained significant common law trademark and other rights in their Twisty Petz Products through their extensive use, advertising and promotion, Plaintiffs have also protected their valuable rights by filing for and obtaining a federal trademark registration.

14.     Spin Master is the owner of U.S. Trademark Registration No. 5,514,561 for "TWISTY PETZ" for a variety of goods in Class 28 ("Twisty Petz Mark").  A true and correct copy of the registration certificate for the Twisty Petz Mark is attached hereto as **Exhibit B** and incorporated herein by reference.

15.     The Twisty Petz Mark is currently in use in commerce in connection with the Twisty Petz Products.  The constructive date of first use based on Plaintiffs' federal trademark registration for their Twisty Petz Mark is at least as early as February 17, 2018.

16.     In addition, Spin Master owns both registered and unregistered copyrights in and related to the Twisty Petz Products.

---

[1] Melanie Notkin, *These are the hottest toys for 2018* (April 5, 2018), NEW YORK POST, https://nypost.com/2018/04/05/these-are-the-hottest-toys-for-2018/; Remi Rosmarin, *Amazon predicts these will be the 100 hottest toys every kid wants this holiday season* (October 13, 2018), BUSINESS INSIDER, https://www.businessinsider.com/amazon-best-toys-games-holidays-christmas-2018-9.

[2] PR.COM, TOP 10 HOT HOLIDAY 2018 GIFTS THAT WILL BECOME IMPOSSIBLE TO FIND (October 1, 2018), http://www.lethalchickengames.com/blog/top-10-hot-holiday-2018-gifts-that-will-become-impossible-to-find.

17.     Plaintiffs have protected their valuable rights by filing and obtaining a U.S. copyright registration in and relating to the Twisty Petz Products.  Spin Master is the owner of U.S. Copyright Registration No. VA 1-305-408, covering the Twisty Petz Packaging Artwork & Collectors' Guides, as well as numerous common law copyrights ("Twisty Petz Work").  A true and correct copy of the registration certificate for the Twisty Petz Work is attached hereto as **Exhibit C** and incorporated herein by reference.

18.     Plaintiffs have spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in their Twist Petz Products, Twisty Petz Mark and Twisty Petz Work.

19.     The success of the Twisty Petz Products is due in large part to Plaintiffs' marketing, promotion and distribution efforts.  These efforts include, but are not limited to, the advertising and promotion of the Twisty Petz Products through Plaintiffs' website entirely dedicated to the Twisty Petz Products, http://www.twistypetz.com, nationwide television advertising campaigns for the Twisty Petz Products, print and internet-based advertising and publicity for the Twisty Petz Products, placement of the Twisty Petz Products at dozens of authorized major retail outlets, both domestically and abroad and Plaintiffs' participation in trade shows.

20.     Plaintiffs' success is also due to their use of high quality materials and processes in making the Twisty Petz Products.

21.     Additionally, Plaintiffs owe a substantial amount of the success of the Twisty Petz Products to their consumers and word-of-mouth buzz that their consumers have generated.

22.     Plaintiffs' efforts, the quality of Plaintiffs' products, their marketing, promotion and distribution efforts and the word-of-mouth buzz generated by their consumers have made the Twisty Petz Mark, Twisty Petz Work and Twisty Petz Products prominently placed in the minds

of the public.  Members of the public and retailers have become familiar with Plaintiffs' Twisty Petz Mark, Twisty Petz Work and Twisty Petz Products, and have come to associate them exclusively with Spin Master.  Plaintiffs have acquired a valuable reputation and goodwill among the public as a result of such association.

23.     Plaintiffs have gone to great lengths to protect their interests to the Twisty Petz Products, Twisty Petz Mark and Twisty Petz Work.  No one other than Plaintiffs and their authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Twisty Petz Mark or Twisty Petz Work without the express permission of Spin Master.

## Wish and Defendants' User Accounts

24.     Wish.com is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China,[3] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "Wish").

25.     A majority of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Wish, like Defendants, are located in China.[4]  As of May 2015, over 40 million items from 100,000 User Accounts were available on Wish.[5]  Between June 2014 and May 2015, nearly 100 million distinct User Accounts became registered on Wish.[6]  Currently, Wish

---

[3] *See* Armando Roggio, *Ecommerce Lessons from the Wish Shopping App*, PRACTICALECOMMERCE (Jan. 7, 2015), https://www.practicalecommerce.com/Ecommerce-Lessons-from-the-Wish-Shopping-App.
[4] *See* Greg Bensinger, *Wish, a Direct-From-China Shopping App, Lures Bargain Hunters*, WALL STREET JOURNAL (May 19, 2015), https://www.wsj.com/articles/wish-a-direct-from-china-shopping-app-lures-bargain-hunters-1431909072.
[5] *See id*.
[6] *See id*.

claims a base of over 300 million users.[7]  As one of the leaders of the worldwide e-commerce and digital retail market, Wish has generated billions in sales worldwide.[8]  Sales to the U.S. make up a significant percentage of the business done on Wish.  For example, online sales account for 8.6% of all retail transactions in the U.S., and nearly 8% of online shopping done by teenagers was performed using Wish, which is second only to Amazon.com.[9]  On Cyber Monday of 2017, Wish accounted for 6.2% of teenager spending.[10]  Currently, Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S.[11]

26.    Wish aggressively uses the internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  For example, Wish is in the top-five largest advertisers on the aforementioned popular search engines and social media websites.[12]  In 2015, Wish spent approximately $100 million on advertisements on Facebook alone.[13]

27.    As recently addressed in news reports,[14] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit

---

[7] *See* WISH.COM, https://www.wish.com/careers.

[8]*See* Connie Loizos, *Wish is Raising Again, and Giving Late-Stage Investors Protection*, TECHCRUNCH.COM (Oct. 28, 2016), https://techcrunch.com/2016/10/28/wish-is-raising-again-and-giving-late-stage-investors-protection/.

[9] *See* Deena M. Amato-McCoy, *Study: Teens Twice as Likely to Shop Online Than Adults,* CHAINSTOREAGE.COM (Oct. 16, 2017), https://www.chainstoreage.com/technology/study-teens-twice-likely-shop-online-adults/.

[10] *See* Marianne Wilson, *Teens hot on Black Friday, but cool on Cyber Monday*, CHAINSTORAGE.COM (Nov. 29, 2017), https://www.chainstoreage.com/real-estate/teens-hot-black-friday-cool-cyber-monday/.

[11] *See* Parmy Olson, *At $8.5 Billion, Shopping App 'Wish' Is Now Worth More Than Sears, Macy's and JC Penney Combined*, FORBES, https://www.forbes.com/sites/parmyolson/2017/09/20/wish-8-billion-funding-amazon/#c360ab961e1d.

[12] *See* SENSORTOWER, MOBILE ADVERTISING ATLAS, Q2 2017 REPORT, *available at* https://s3.amazonaws.com/sensortower-itunes/Quarterly+Reports/Sensor-Tower-Q2-2017-Ad-Intel-Data-Digest.pdf?=landing.

[13] *See* Jason Del Rey, *Meet Wish, the $3 Billion App That Could Be The Next Walmart*, RECODE (Dec. 28, 2015), https://www.recode.net/2015/12/28/11621724/meet-wish-the-3-billion-app-that-could-be-the-next-walmart.

[14] *See* Andi Sykes, *Specialized Wages Ware on Counterfeiters* (Dec. 9, 2016), http://singletrackworld.com/2016/12/specialized-wages-war-on-counterfeiters/

products on Wish,[15] an astronomical number of counterfeit and infringing products are offered for sale and sold on Wish at a rampant rate.[16]

28.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Wish as well as potentially yet undiscovered additional online marketplace platforms.

29.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

30.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

31.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## Defendants' Wrongful and Infringing Conduct

32.     Particularly in light of Plaintiffs' success with their Twisty Petz Products, as well as the reputation they have gained, Plaintiffs and their Twisty Petz Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and

---

[15] *See, e.g.*, *Specialized Bicycle Components, Inc. v. in-style1820, et al*., Civil Case No. 16-cv-62711 (S.D. Fl. Nov. 17, 2016) and *David Gilmour Music Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 17-cv-7763 (N.D. Ill., Nov.1, 2017).

[16] *See* Tom Hoffarth, *Lakers' Wish List Cheapened by the Dozen*, DAILY NEWS (Sept. 22, 2017), http://www.dailynews.com/2017/09/22/hoffarth-lakers-wish-list-cheapened-by-the-dozen/.

fame that Plaintiffs have amassed in their Twisty Petz Products, Twisty Petz Mark and the works embodied in the Twisty Petz Work and Plaintiffs investigate and enforce against such activities.

33.     As part of these efforts, Plaintiffs retained New Alchemy Limited ("NAL"), a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on online marketplace platforms such as Wish.

34.     Through NAL's investigative and enforcement efforts, Plaintiffs learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing or used in connection with the Twisty Petz Mark and/or Twisty Petz Work, and/or products in packaging and/or containing labels bearing the Twisty Petz Mark and/or Twisty Petz Work, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Twisty Petz Mark and/or Twisty Petz Work and/or products that are identical or confusingly or substantially similar to the Twisty Petz Products (collectively referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts on Wish.  Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference**.**

35.     Defendants are not, and have never been, authorized by Plaintiffs or any of their authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Twisty Petz Products or to use the Twisty

Petz Mark and Twisty Petz Work, or any marks or artwork that are confusingly or substantially similar to the Twisty Petz Mark or Twisty Petz Work.

36.    Defendants' Counterfeit Products are nearly indistinguishable from Plaintiffs' Twisty Petz Products, only with minor variations that no ordinary consumer would recognize.

37.    During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address.  Printouts of the checkout pages for the Counterfeit Products reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D** attached hereto and incorporated herein by reference**.**

38.    NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through Wish's own payment processing system ("Wish Payment System"), or through accounts with the payment processing agency PayPal, Inc. ("PayPal"), and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit D** attached hereto and incorporated herein by reference.

39.    For example, below on the left is an image of one of Plaintiffs' Twisty Petz Products, which typically retails for $5.99.  Depicted below on the right is a listing for Defendant halostore's Counterfeit Product ("halostore Infringing Listing" and "halostore Counterfeit Product," respectively).   The halostore Infringing Listing appears on Defendant halostore's

Merchant Storefront, https://www.wish.com/product/5bc93d2c9c327e6f68610504, and offers the halostore Counterfeit Product for $1.00 per item, using, featuring and/or incorporating one or more of the Twisty Petz Mark or Twisty Petz Work, and/or confusingly or substantially similar marks or artwork in the listing title "Creative Child Design Bead Handchain Tricks Twisty DIY Girl Sewing Magic Mascot Bracelets Animal Change Bracelet" and in the descriptions and/or product images in the body of the listing.  Further, the halostore Counterfeit Product is virtually identical to one of Plaintiffs' Twisty Petz Products and features and/or incorporates one or more of the Twisty Petz Work and Twisty Petz Mark.  There is no question that the halostore Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Twisty Petz Products or that the halostore Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Twisty Petz Work and Twisty Petz Mark:

**Twisty Petz Product**                          **halostore Counterfeit Product**

   

40.     By way of another example, below on the left is an image of one of Plaintiffs' Twisty Petz Products, which typically retails for $5.99.  Depicted below on the right is a listing for Defendant Shenzhen Huge Creation Technology LTD's Counterfeit Product ("Shenzhen Huge Creation Technology LTD Infringing Listing" and "Shenzhen Huge Creation

Technology LTD Counterfeit Product," respectively).  The Shenzhen Huge Creation Technology LTD Infringing Listing appears on Defendant Shenzhen Huge Creation Technology LTD's Merchant Storefront, https://www.wish.com/product/5bd5147fe74e6216b219c1ed, and offers the Shenzhen Huge Creation Technology LTD Counterfeit Product for $10.00 per item, using, featuring and/or incorporating one or more of the Twisty Petz Mark or Twisty Petz Work, and/or confusingly or substantially similar marks or artwork in the listing title "Cute DIY Animal Elasticity Twist Magic Tricks Kids Toys Gifts Mascot Bracelets Pattern Random" and in the descriptions and/or product images in the body of the listing.  Further, the Shenzhen Huge Creation Technology LTD Counterfeit Product is virtually identical to one of Plaintiffs' Twisty Petz Products and features and/or incorporates one or more of the Twisty Petz Work and Twisty Petz Mark.  There is no question that the Shenzhen Huge Creation Technology LTD Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Twisty Petz Products or that the Shenzhen Huge Creation Technology LTD Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Twisty Petz Work and Twisty Petz Mark:

| **Twisty Petz Product** | **Shenzhen Huge Creation Technology LTD Counterfeit Product** |
|:---:|:---:|
|  |  |

41.     As another example, below on the left is an image of one of Plaintiffs' Twisty Petz Products, which typically retails for $10.99.  Depicted below on the right is a listing for Defendant HOMEINN NEW's Counterfeit Product ("HOMEINN NEW Infringing Listing" and "HOMEINN NEW Counterfeit Product," respectively).  The HOMEINN NEW Infringing Listing appears on Defendant HOMEINN NEW's Merchant Storefront, https://www.wish.com/product/5bbb0b5a54c30c1b7599e3e5,  and offers the HOMEINN NEW Counterfeit Product for $2.00 per item, using, featuring and/or incorporating one or more of the Twisty Petz Mark or Twisty Petz Work, and/or confusingly or substantially similar marks or artwork in the listing title "Tricks Creative Baby Kids Twisted Magical Animal Stitching Pet Diy Bracelet Bracelets" and in the descriptions and/or product images in the body of the listing. Further, the HOMEINN NEW Counterfeit Product is virtually identical to one of Plaintiffs' Twisty Petz Products and features and/or incorporates one or more of the Twisty Petz Work and Twisty Petz Mark.  There is no question that the HOMEINN NEW Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Twisty Petz Products or that the HOMEINN NEW Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Twisty Petz Work and Twisty Petz Mark:

| **Twisty Petz Product** | **HOMEINN NEW Counterfeit Product** |
| --- | --- |
|  |  |

42.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiffs' exclusive rights in the Twisty Petz Mark and Twisty Petz Work, and have used marks, images and artwork that are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Twisty Petz Mark and Twisty Petz Work in order to confuse consumers into believing that such Counterfeit Products are Twisty Petz Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiffs' adoption and use of the Twisty Petz Mark and Twisty Petz Work, after Plaintiffs obtained the federal registrations in the Twisty Petz Mark and Twisty Petz Work, as alleged above, and after Plaintiffs' Twisty Petz Products, Twisty Petz Mark and Twisty Petz Work became well-known to the purchasing public.

43.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the Twisty Petz Mark and Twisty Petz Work, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Twisty Petz Products, and in bad faith adopted the Twisty Petz Mark and Twisty Petz Work.

44.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, the Twisty Petz Mark, Twisty Petz Work and Twisty Petz Products.

45.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and have deceived and will continue to

deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

46.    In engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiffs: infringed and counterfeited the Twisty Petz Mark, infringed the Twisty Petz Work, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiffs' expense.

47.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)))**

48.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.    Plaintiffs are the exclusive owners of all right and title to the Twisty Petz Mark.

50.    Plaintiffs have continuously used the Twisty Petz Mark in interstate commerce since on or before the date of first use as reflected in the registration attached hereto as **Exhibit B**.

51.    Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their Twisty Petz Mark and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Twisty Petz Mark and/or used spurious designations that are identical with, or substantially indistinguishable from, the Twisty Petz Mark on or in connection with the

manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

52.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiffs' rights in and to the Twisty Petz Mark through their participation in such activities.

53.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Twisty Petz Mark to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

54.     Defendants' unauthorized use of the Twisty Petz Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Twisty Petz Mark.

55.     Defendants' actions constitute willful counterfeiting of the Twisty Petz Mark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

56.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their business, their reputation and their valuable rights in and to the Twisty Petz Mark and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Twisty Petz Mark.

57.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademark)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

58.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59.     Plaintiffs have continuously used the Twisty Petz Mark in interstate commerce since on or before the date of first use as reflected in the registration certificate attached hereto as **Exhibit B**.

60.     Plaintiffs, as owner of all right, title and interest in and to the Twisty Petz Mark, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

61.     Defendants were, at the time they engaged in their actions as alleged herein,

actually aware that Plaintiffs are the owners of the federal trademark registration for the Twisty Petz Mark.

62.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiffs, as the registered trademark owners of the Twisty Petz Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Twisty Petz Products and/or related products bearing the Twisty Petz Mark into the stream of commerce.

63.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Twisty Petz Mark and/or which are identical or confusingly similar to the Twisty Petz Mark.

64.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Twisty Petz Mark and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

65.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiffs are the owners of all rights in and to the Twisty Petz Mark.

66.     Defendants' egregious and intentional use of the Twisty Petz Mark in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the

general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiffs' Twisty Petz Products or are otherwise associated with, or authorized by, Plaintiffs.

67.     Defendants' actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the Twisty Petz Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

68.     Defendants' continued, knowing, and intentional use of the Twisty Petz Mark without Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' federally registered Twisty Petz Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

69.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Twisty Petz Mark and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and the valuable Twisty Petz Mark.

70.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

71.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs, as the owners of all right, title and interest in and to the Twisty Petz Mark, have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

73.     The Twisty Petz Mark is inherently distinctive and/or has acquired distinctiveness.

74.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of the Twisty Petz Mark and Twisty Petz Work and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Twisty Petz Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Twisty Petz Mark and Twisty Petz Work, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

75.     By manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' Twisty Petz Products, using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the Twisty Petz Mark and Twisty Petz Work, Defendants have traded off the extensive goodwill of Plaintiffs and their Twisty Petz Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and their Twisty Petz Mark, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

76.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of the Twisty Petz Mark and Twisty Petz Work would cause confusion, mistake or deception among purchasers, users and the public.

77.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiffs, their Twisty Petz Products, Twisty Petz Mark and Twisty Petz Work.

78.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their Twisty Petz Products and by depriving Plaintiffs of the value of their Twisty Petz Mark and Twisty

Petz Work as commercial assets in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Twisty Petz Mark and Twisty Petz Work.

79.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**

80.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81.     Plaintiffs are the exclusive owners of the Twisty Petz Work.

82.     Defendants had actual notice of Plaintiffs' exclusive rights in and to the Twisty Petz Work.

83.     Defendants did not attempt and therefore inherently failed to obtain Plaintiffs' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiffs' Twisty Petz Products and/or Twisty Petz Work.

84.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Twisty Petz Work by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products

which bear such Twisty Petz Work, or artwork that is, at a minimum, substantially similar to the Twisty Petz Work.

85.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Twisty Petz Work, including Plaintiffs' exclusive rights to reproduce, distribute and/or sell such Twisty Petz Work in violation of 17 U.S.C. § 501(a).

86.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiffs in an amount as yet unknown but to be proven at trial, for which Plaintiffs have no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiffs.

87.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief, Plaintiffs' actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Violation of Deceptive Acts and Practices Unlawful)**
**[N.Y. Gen. Bus. Law § 349]**

88.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Through Defendants' unlawful, unauthorized and unlicensed use of the Twisty Petz Work and/or Twisty Petz Mark on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiffs' Twisty Petz Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

90.    Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially mislead or has a tendency to deceive and materially mislead the consuming public, and has injured and will continue to injure Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 349.

91.    As a result of Defendants' actions alleged herein, Plaintiffs have suffered and will continue to suffer irreparable harm for which they have no adequate remedy at law.

92.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(False Advertising Unlawful)**
**[N.Y. Gen. Bus. Law § 350]**

93.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.    Without the authorization of Plaintiffs, Defendants have used the Twisty Petz Mark and/or Twisty Petz Work and/or marks and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to the Twisty Petz Mark and/or Twisty Petz Work in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiffs' Twisty Petz Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

95.    Defendants' aforementioned willful and intentional conduct constitutes false

advertising in the conduct of any business, trade or commerce and has injured and will continue to injure Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 350.

96.     As a result of Defendants' actions alleged herein, Plaintiffs have suffered and will continue to suffer irreparable harm for which they have no adequate remedy at law.

97.     Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

98.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

99.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiffs and their Twisty Petz Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

100.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants'

Counterfeit Products.

101.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

102.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiffs, and their competitive position while benefiting Defendants.

103.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiffs have been and will continue to be deprived of substantial sales of their Twisty Petz Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been and will continue to be deprived of the value of their Twisty Petz Mark and Twisty Petz Work as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law.

104.    As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

### EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

105.    Plaintiffs replead and incorporate by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

106.    By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

107.    Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of Plaintiffs' federally registered Twisty

Petz Mark, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiffs' actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Twisty Petz Work under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement of the Twisty Petz Work pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of

them who receives notice directly or otherwise of such injunction from:

    i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

    ii.  directly or indirectly infringing in any manner any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Twisty Petz Mark or Twisty Petz Work;

    iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Twisty Petz Mark and Twisty Petz Work to identify any goods or services not authorized by Plaintiffs;

    iv.  using any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Twisty Petz Work or Twisty Petz Mark, or any other marks or artwork that are confusingly or substantially similar to the Twisty Petz Mark or Twisty Petz Work, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or

association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.   engaging in any other act in derogation of Plaintiffs' rights;

ix.   secreting, destroying, altering, removing, or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from

or to financial accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefronts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"), and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xii.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

xiii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiv.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xiii) above; and

L.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiffs for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers

that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation, the Twisty Petz Mark or Twisty Petz Work, or bear any marks that are confusingly or substantially similar to the Twisty Petz Mark or Twisty Petz Work;

M.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiffs any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation, the Twisty Petz Mark or Twisty Petz Work, or bear any marks that are confusingly or substantially similar to the Twisty Petz Mark or Twisty Petz Work pursuant to 15 U.S.C. § 1118;

N.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

O.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiffs;

P.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.      For Plaintiffs' reasonable attorneys' fees;

R.      For all costs of suit; and

S.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.


Dated: November 28, 2018

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____

Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd.*
*and Spin Master, Inc.*

# EXHIBIT A







3



# EXHIBIT B

# United States of America

## United States Patent and Trademark Office

# TWISTY PETZ

**Reg. No. 5,514,561**

**Registered Jul. 10, 2018**

**Int. Cl.: 28**

**Trademark**

**Principal Register**

David Fuhrer Enterprises LLC  (CALIFORNIA LIMITED LIABILITY COMPANY), DBA Funanuf
11862 La Grange Ave
Los Angeles, CALIFORNIA 90025

CLASS 28: Toy jewelry which can transform into a toy figure and then back into toy jewelry

FIRST USE 2-17-2018; IN COMMERCE 2-17-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "PETS"

SER. NO. 87-231,632, FILED 11-09-2016

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- ***First Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.


**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*


**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT C

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Leigh Clagett*

Acting United States Register of Copyrights and Director

**Registration Number**

# VAu 1-305-408

**Effective Date of Registration:**
February 13, 2018

## Title _____

**Title of Work:**  Twisty Petz Packaging Artwork & Collectors' Guides

**Content Title:**  Twisty Petz Collectors' Guide

Twisty Petz Single Pack

Twisty Petz 3 Pack

Twisty Petz Baby Collectors' Guide

Twisty Petz Baby 4 Pack

## Completion/Publication _____

**Year of Completion:**  2017

## Author _____

- **Author:**  Spin Master, Inc.
  **Author Created:**  2-D artwork
  **Work made for hire:**  Yes
  **Citizen of:**  United States

## Copyright Claimant _____

**Copyright Claimant:**  Spin Master Ltd.
121 Bloor Street East, Toronto, Ontario, M4W 3M5
**Transfer statement:**  By written agreement

## Rights and Permissions _____

**Organization Name:**  Epstein Drangel LLP
**Email:**  mail@ipcounselors.com
**Telephone:**  (212)292-5390